**In re CRUTCHER TRANSFER LINE, INC., Debtor.**

**Bankruptcy No. 3-81-01183.**

United States Bankruptcy Court,
W. D. Kentucky.

March 25, 1982.

Glenn L. Schilling, Louisville, Ky., for trustee.

J. Baxter Schilling, Louisville, Ky., trustee.

Wallace H. Spalding, III, Louisville, Ky., for Harold Crutcher.

John W. Ames, Alan Linker, Louisville, Ky., for debtor.

## ORDER

STEWART E. BLAND, Bankruptcy Judge.

This bankruptcy case comes before the Court on motion of the trustee for the

award of an attorney's fee to the trustee's attorney, the law firm of Schilling and Schilling (Schilling) in the amount of Fourteen Thousand Five Hundred Thirty-Five and No/100 Dollars ($14,535.00), for professional services and expenses rendered in this case, and on objection of Harold Crutcher, by counsel, to the allowance of the fee. The issues raised by the motion and response thereto were set for hearing on October 28, 1981. Thereafter, on October 30, 1981, Harold Crutcher was directed to file specific objections to the requested fee allowance, and movant was given fifteen (15) days to respond. The issues were submitted for decision on November 24, 1981.

Although not recited in the motion as required by Rule 10, Rules of the United States District Court for the Western District of Kentucky as adopted by Rule 2, Rules of the United States Bankruptcy Court for the Western District of Kentucky, effective August 1, 1980, the authority of this Court to allow the compensation sought by Schilling must be founded and awarded pursuant to 11 U.S.C. § 328(b), which provides:

"(b) If the court has authorized a trustee to serve as an attorney ... for the estate under section 327(d) of this title, the court may allow compensation for the trustee's services as such attorney ... only to the extent that the trustee performed services as attorney ... for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney ... for the estate." [1]

The Court having reviewed the documentary evidence of record, the memoranda of the parties in support of their respective positions, pertinent statutory authorities and rules and being sufficiently advised, hereby enters its Findings of Fact and Conclusions of Law: [2]

[1] Also, 11 U.S.C. § 327, Interim Bankruptcy Rule 2006, as adopted by Local Rule 3, Western District of Kentucky, and Rule 219, Rules of Bankruptcy Procedure.

## FINDINGS OF FACT

1. That a voluntary petition in bankruptcy was filed by Crutcher Transfer Line, Inc., by and through its president, Harold Crutcher, on May 1, 1981.

2. That J. Baxter Schilling was appointed interim trustee of the Crutcher Transfer estate on May 5, 1981.

3. That a meeting of creditors was conducted on May 26, 1981.

4. That J. Baxter Schilling (interim trustee) was then appointed trustee on May 26, 1981.

5. That J. Baxter Schilling as interim trustee moved to have himself appointed as attorney for the trustee on May 8, 1981.

6. That by order of this Court entered May 12, 1981, J. Baxter Schilling was allowed to retain himself as attorney for the estate.

7. That on August 3, 1981, the trustee moved to have the law firm of Schilling and Schilling retained as counsel for the trustee at the following hourly charges:

| | |
|---|---|
| Glenn Schilling | $95.00 per hour |
| J. Baxter Schilling | 65.00 per hour |
| Thomas Volk | 45.00 per hour |

8. That the Court entered its order of August 3, 1981, sustaining the trustee's motion permitting him to retain Schilling and Schilling at the prescribed rates.

9. That the trustee has taken the following actions regarding property of the estate:

(a) May 29, 1981, sold 1977 Oldsmobile Regency to Harold Crutcher for $1,800.00, after notice and approval of this Court by Order entered June 15, 1981.

(b) May 29, 1981, sold 1977 Oldsmobile Regency to Norman Crutcher for $1,800.00, after notice and approval of this Court by Order entered June 15, 1981.

[2] Rule 752, R.B.P. and *Matter of First Colonial Corp. of America*, 544 F.2d 1291, 1300 (5th Cir. 1977).

708

(c) October 6, 1981, filed a motion seeking to confirm the sale of debtor's assets conducted on July 25, 1981; total proceeds were $159,416.27, with costs of $19,983.63.

(d) Sold the certificates of public convenience and necessity of Crutcher to H & O Transport, Inc., of Campbellsville, Kentucky, for $9,750.

(e) August, 1981, sold through Stewart Auction Co., Louisville, Kentucky, miscellaneous assets not sold in previous sale for $5,797.31, with costs of $1,271.76. The report of sale was filed with the Court on October 6, 1981.

| | | |
|---|---|---|
| (f) | Accounts receivable collection | $58,000.02 |
| (g) | Turnover of bank account, West Point Bank to trustee | 7,374.12 |
| (h) | Turnover of bank account in North Hardin National Bank to trustee | 31.38 |
| (i) | Settlement of claim of trustee and counterclaim of the landlord | 2,000.00 |
| (j) | Collection of interline receivables | 7,303.53 |
| (k) | Interest earned on liquidated assets | 12,487.49 |

10. That the trustee, in liquidating and preserving the assets of the estate has incurred the following expenses:

| | | |
|---|---|---|
| Helen Osman | Net wages | $ 309.64 |
| Helen Osman | Net wages | 309.64 |
| Melvin Russ | Net wages | 213.53 |
| Melvin Russ | Net wages | 213.53 |
| Harold Crutcher | Net wages | 319.30 |
| Harold Crutcher | Net wages | 319.30 |
| Harold Crutcher | Net wages | 319.30 |
| Melvin Russ | Net wages | 213.53 |
| Helen Osman | Net wages | 309.64 |
| Helen Osman | Net wages | 309.64 |
| Helen Osman | Net wages | 309.64 |
| Helen Osman | Net wages (2 weeks) | 619.28 |
| Jefferson Special Police | Security Services—Partial payment | 1,685.25 |
| Nahm, Turner, Vaughan | Cargo filing premium | 500.00 |
| Helm & Helm, Realtors | Appraisal on value of lease at 600 Marrett | 75.00 |
| Bruce D. Handy | Deposition fee for Harold Crutcher | 153.95 |
| Stewart Auction Co. | Auctioneer's fees and expenses for 7/25/81 sale | 17,696.09 |
| Jefferson Special Police, Inc. | Final payment on security for 600 Marrett | 2,116.95 |
| Stewart Auction Co. | Payment of certain expenses relating to 7/25/81 sale per court order of 8/29/81 | 2,187.59 |
| Stewart Auction Co. | Payment of fees and expenses relating to salvage sale 8/16/81 | 1,271.76 |
| Harold Crutcher | Net wages | 319.30 |
| Helen Osman | Net wages | 309.64 |
| Treasurer, Kentucky Unemployment Ins. Fund | Unemployment contribution for 2nd quarter of 1981 relating to Harold Crutcher, Melvin Russ and Helen Osman | 71.60 |
| Jane Dudgeon | Bookkeeping expenses relating to 3rd quarter filing | 7.50 |
| Jane Dudgeon | Bookkeeping services relating to issuance of W–2 statements to Harold Crutcher, Melvin Russ and Helen Osman and 4th quarter reports | 50.00 |
| Helen Osman | Payment of preparation of W–2 statements and tax reports to various city, state and federal taxing authorities per court order | 562.97 |

11. That the trustee, upon application and after court approval has retained the following persons to assist him during the administration of this case:

| | | |
|---|---|---|
| Helen Osman | Bookkeeping services | 431.35/week |
| Harold Crutcher | Collection of accounts receivable | 473.33/week |
| Norman Crutcher | Collection of accounts receivable | 275.00/week |

12. That on September 11, 1981, the trustee filed a motion for an attorneys' fee to be awarded to Schilling in the amount of $14,535.00, and for costs expended in the amount of $110.00.

13. That on September 17, 1981, this Court gave notice of the motion for attorneys' fee to all parties in interest and directed that objections, if any, be filed on or before October 7, 1981.

14. That an objection to the trustee's attorneys' fee application was filed October 2, 1981, by Harold Crutcher.

15. That a hearing on the attorneys' fee application was conducted on October 28, 1981, and after hearing the parties were directed to file memoranda in support of their respective positions.

## CONCLUSIONS OF LAW

1. That 11 U.S.C. § 327(d) authorizes the Court to permit "... the trustee to act as attorney ... for the estate if such authorization is in the best interest of the estate."

2. That 11 U.S.C. § 327(a) authorizes the trustee with court approval to employ "... one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."

3. That 11 U.S.C. § 328(b) provides in pertinent part that:

"(b) If the court has authorized a trustee to serve as an attorney ... for the estate under section 327(d) of this title, the court may allow compensation for the trustee's services as such attorney ... only to the extent that the trustee performed services as an attorney ... for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney ... for the estate."

4. That 11 U.S.C. § 328(a) permits:

"(a) The trustee ... with the court's approval, may employ or authorize the employment of a professional person under section 327 ... on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments unanticipated at the time of the fixing of such terms and conditions."

5. That 11 U.S.C. § 330 prescribes the standards by which compensation and costs are awarded to be:

"(1) reasonable compensation for actual, necessary services rendered by such trustee ... or attorney, as the case may be ... based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and (2) reimbursement for actual, necessary expenses."

6. That the trustee's compensation under § 330(a)(1) is limited to the maximum set forth under 11 U.S.C. § 326(a) which provides that:

"(a) In a case under chapter 7 ... the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed fifteen percent on the first $1,000 or less, six percent on any amount in excess of $1,000 but not in excess of $3,000, three percent on any amount in excess of $3,000 but not in excess of $20,000, two percent on any amount in excess of $20,000 but not in excess of $50,000, and one percent on any amount in excess of $50,000 ..."

7. That Rule 2006, Interim Bankruptcy Rules, as adopted by this Court as Local Rule 3, directs that:

"An order approving the employment of attorneys ... pursuant to § 327 ... of the Bankruptcy Code shall be made only on application of the trustee ... stating

the specific facts showing the necessity for such employment, the name of the person to be employed, the reasons for his selection, the professional services to be rendered . . ."

■ 8. That the burden of proof to establish the entitlement to and the reasonableness of an allowance of a professional fee from the assets of the bankruptcy estate is upon the movant. *Matter of Aldersgate Foundation, Inc.,* 10 B.R. 910, 918 (Bkrtcy.M.D.Fla.1981), citing *Woods v. City National Bank & Trust Co.,* 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941); and *Matter of Hamilton Hardware Co., Inc.,* 11 B.R. 326 (Bkrtcy.E.D.Mich.1981).

■ 9. That "The court has a duty regardless of whether or not objections are filed to determine whether the compensation requested is or is not reasonable." *Matter of Hamilton Hardware Co., Inc., supra,* at 328, citing *York International Building, Inc. v. Chaney,* 527 F.2d 1061, 1077 (9th Cir. 1975); see also *In Re Kentucky Electric Power Corp.,* 11 F.Supp. 528 (W.D.Ky.1935); 2 *Collier on Bankruptcy,* ¶ 330.05[2][a] (15th Ed. 1981); and *In Re St. Pierre, d/b/a The Price Is Right,* 4 B.R. 184 (Bkrtcy.D.R.I. 1980).

10. That § 330(a) requires that notice be given to any parties in interest which are defined to include ". . . the debtor, the trustee, a creditor's committee, equity security holders' committee, indentured trustee . . .", 2 *Collier* ¶ 330.03[2] (15th Ed. 1981), and a debtor's stockholders, *Matter of First Colonial Corp. of America,* 544 F.2d 1291, 1296–1298 (5th Cir. 1977); *York International Building, Inc. v. Chaney, supra.*

■ 12. That the criteria to be considered, in this judicial circuit, in determining the compensation to be allowed are:

"(a) The amount of work done

(b) The difficulties or intricacies of the problem presented

(c) The skill required and experience of counsel in similar case

(d) The results accomplished

(e) The amount involved in connection with the services rendered

(f) The size of the estate

(g) The length of time consumed

(h) Contingency or continuity of compensation

(i) The expeditious performance of legal services

(j) The professional quality of the services rendered" *CLE–Ware Industries, Inc. v. Sokolsky,* 493 F.2d 863, 869 (6th Cir. 1974); also, *Matter of U. S. Golf Corp.,* 639 F.2d 1197 (5th Cir. 1981).

13. That "Hours alone are a false criteria that can result in the reward of inexperience, inefficiency and incompetence." *In Re Pajarito American Indian Art, Inc.,* 11 B.R. 807, 809 (Bkrtcy.D.Ariz.1981), quoting *In Re Grady,* 18 C.B.C. 96 (S.D.Iowa, 1978).

■ 14. That a court should not place too great a determinative weight on the factor (time) in fixing compensation unless the criteria of time is considered in conjunction with the other applicable standards, as explained by Judge Herzog:

"Is an attorney to be penalized because his mental ability enables him to accomplish the same results in half the time it takes his competent, but slower colleague? If number of hours employed is to have weight, then the court must first determine whether it was necessary to spend the amount of time claimed by the applicant: *the test should be time 'fairly and properly' necessary to deal with the case, rather than actual time logged.*" (Emphasis added.)

*In Re Grady, ibid,* at 109.

■ 15. That "It is the duty of the court in administering the bankruptcy law to avoid double expense to the estate." *CLE–Ware Industries, Inc. v. Sokolsky, supra,* citing *Gochenour v. Cleveland Terminals Bldg. Co.,* 142 F.2d 991 (6th Cir. 1944); and *Matter of Aldersgate Foundation, Inc.,* 10 B.R. 910 (Bkrtcy.M.D.Fla.1981).

16. That the "economic spirit" test has been eliminated by the Code, and Congress intended to overrule *In Re Beverly Crest Convalescent Hospital, Inc.,* 548 F.2d 817

(9th Cir. 1976), and its progeny which applied arbitrary and lower limits on the award of attorney fees in bankruptcy cases. *Matter of Hamilton Hardware Co., Inc., supra* ; also 2 *Collier* ¶ 330.05[2][a].

17. That rule 219(c)(3), R.B.P., provides that "... compensation may be allowed an attorney ... only for professional services."

■ 18. That for the services of an attorney to be chargeable as a cost of administration, the attorney must "exercise professional legal skill and expertise beyond the ordinary knowledge and skill of the trustee", and the attorney cannot be compensated for the performance of the fiduciary duties of the trustee-client. *In Re McAuley Textile Corp.*, 11 B.R. 646 (Bkrtcy. D.Maine, 1981); *In Re Pajarito American Indian Art, Inc., supra; Matter of U. S. Golf Corp., supra; Matter of First Colonial Corp. of America, supra; CLE–Ware Industries, Inc. v. Sokolsky, supra* ; 2 *Collier* ¶ 327.01 (15th Ed. 1981); and 124 Cong.Rec. H11,091 (daily ed. September 28, 1978) S17,-408 (daily ed. Oct. 6, 1978).

■ 19. That the purpose of consolidating the functions of the trustee and attorney in one person is for the purpose of reducing the cost of administering the case. 2 *Collier* ¶ 327.03[5], citing *In Re Mabson Lumber Co.*, 394 F.2d 23 (2nd Cir. 1968).

20. That:
"The purpose of permitting the trustee to serve as his own counsel is to reduce costs. It is not included to provide the trustee with a bonus by permitting him to receive two fees for the same service or to avoid the maxima fixed in section 326. Thus, this subsection requires the court to differentiate between the trustee's services as trustee, and his services as trustee's counsel, and to fix compensation accordingly. Services that a trustee normally performs for an estate without assistance of counsel are to be compensated under the limits fixed in section 326. Only services that he performs that are normally performed by trustee's counsel may be compensated under the maxima imposed by this section [328]." 2 *Collier*

¶ 327.03[5] (15th Ed. 1981), quoting H.R. Rep.No. 595, 95th Cong., 1st Sess. 310–311 (1977).

21. That the Advisory Committee Note to Rule 215(e), R.B.P., explains:
"It is not intended that such an authorization (employment of attorney for the trustee) should be required or compensation allowed for the performance of the ordinary duties of a trustee, including the collection of accounts, preparation of required records and reports, protection of the estate against unfounded claims, etc." Also, 2 *Collier, ibid,* and 11 U.S.C. § 327(d).

22. That duties of the trustee have been found to include the following:
"To pay routine bills including taxes, to arrange insurance coverage for the estate, to examine books and records of the estate, to sell real estate of the business as a going concern." *In Re McAuley Textile Corp., supra* (citations of authority omitted).

23. That 11 U.S.C. § 704(1) provides that "The trustee shall—
collect and reduce to money the property of the estate for which such trustee serves, and close up such estate as expeditiously as is compatible with the best interests of parties in interest ..."

24. That subsection (1) of section 704 has been found to "... state in general language the trustee's 'main duty', and that the other clauses of this section 'are merely directory as to what the trustee shall do in accomplishing the main object and purpose of the appointment." 4 *Collier* ¶ 704.01 (15th Ed. 1981), citing *Bunch v. Maloney,* 233 F. 967 (8th Cir. 1916), rev'd on other grounds, 246 U.S. 658, 38 S.Ct. 425, 62 L.Ed. 925 (1917).

25. That specific duties of the trustee in accomplishing the congressional objective of expeditious administration at the least possible expense are:
"... by collecting accounts; by instituting necessary legal actions; by securing the necessary orders to compel the debtor or others to deliver over property belong-

ing to the bankrupt estate; by selling real or personal property; by carrying out or rejecting executory contracts . . . ; by proceeding to set aside fraudulent or preferential transfers or liens; or by submitting claims to arbitration or compromise." 4 *Collier, ibid* (citations of authority omitted).

■ 26. That the trustee's duty to initiate litigation is not unlimited, and the trustee must balance the costs of recovery, the likelihood of success, and the probable benefits before he embarks in a judicial forum and as stated in 4 *Collier, ibid*:

"He (the trustee) must institute litigations whenever it is necessary for the purpose of collecting or reducing to money the assets of the estate. By this obligation is not meant that he should burden the assets of the estate with costs and expenses arising out of all manner of questions that may be presented for litigation. There should be probable cause at least for believing that a right of action exists before the estate is so burdened." Citing *In Re Meadows, Williams & Co.*, 181 F. 911 (D.C.N.Y.1910).

■ 27. That the trustee acting as his own attorney initially does not present an inherent conflict of interest between the trustee-attorney and the estate. However, such a conflict may exist and develop when an objection is raised as to the reasonableness of such compensation and may lead to the trustee-attorney adopting a position adverse to the bankrupt and its shareholders. *Matter of First Colonial Corp. of America, supra*, at 1297; and *York Int'l Bldg., Inc. v. Chaney, supra*.

■ 28. That the court adopts the "three step process" that was announced in *First Colonial Corp., ibid*, at 1299–1300, to be the criteria a court should follow to determine the reasonableness of the requested attorney fee:

(1) " . . . ascertain the nature and extent of the services supplied by the attorney . . ."; and "If there are disputed issues of fact, an evidentiary hearing must be held to facilitate their resolution." Citing *Perkins v. Standard Oil*

*Co.*, 399 U.S. 222, 90 S.Ct. 1989, 26 L.Ed.2d 534 (1970);

(2) Assess the value of those services; citing *Montalvo v. Tower Life Building*, 426 F.2d 1135 (5th Cir. 1970); and

(3) Explain the findings and reasons upon which the award was based; citing *Orbit Liquor Store*, 439 F.2d 1351 (5th Cir. 1971).

■ 29. That:

"While a bankruptcy trustee is undoubtedly charged with the duty of preserving property which comes into his custody, including that of claimants whose claims he may in the exercise of reasonable judgment oppose, yet he is also charged with the duty of expeditiously liquidating the estate and avoiding all unreasonable expense either in its preservation or distribution." *Rife v. Ruble*, 107 F.2d 84 (6th Cir. 1939).

30. That the Sixth Circuit Court of Appeals in *CLE–Ware Industries, supra*, while reserving decision until after hearing on remand, indicated by dicta that the following services to the estate would not be classified as professional services:

"(1) Customer relations and investigation;

(2) Meetings with employees of subsidiaries;

(3) Continued representation of the debtor as corporate counsel;

(4) Furnishing information and documents to the Securities and Exchange Commission; and

(5) Work with a public relations specialist."

■ 31. That from a review of the application and surrounding circumstances of the case, the Court concludes that the "salvage theory of compensation" is inapplicable. See *In Re Garfinkle*, 10 B.R. 987 (Bkrtcy.S.D.N.Y.1981).

■ 32. That the attorney for the trustee in this judicial circuit cannot receive professional compensation for performing the following:

"... arranging for the sale of assets, hiring truckmen to carry back concealed property to the bankrupt's place of business, safeguarding the property, going along with the truck, checking up what was found, stirring up criminal prosecution, getting hold of an accountant, collecting accounts due, inquiring of a pledgee of accounts as to equity, examining the bankrupt's papers...." *CLE–Ware Industries, Inc. v. Sokolsky, supra,* quoting *In Re Eureka Upholstering Co.,* 48 F.2d 95 (2nd Cir. 1931).

■ 33. That the bankruptcy court may modify the terms and conditions of the employment order if after the conclusion of the professional contract the "... agreement proves to be improvident in light of developments which could not have been anticipated at the time the agreement was concluded." 2 *Collier* ¶ 328.01 (15th Ed. 1981); 11 U.S.C. § 328(a).

## MEMORANDUM

■ This Court has never welcomed the task of reviewing and passing upon attorney fees whether the application is that of the attorney for the trustee, the debtor, or the creditors' committee. Nevertheless, even absent an objection to a request for fees for professional services, the statutory and case authorities require that the judge to whom the application is made assume this responsibility.

In the instant situation, the itemized time schedule submitted with the application delineates ninety-eight (98) separate entries representing two hundred thirty-eight (238) hours for a fee of Fourteen Thousand Five Hundred Thirty-Five and No/100 Dollars ($14,535.00). In response to this itemized listing, Crutcher has specifically objected to thirty-two (32) items comprising seventy-five and one-half (75.50) hours which is supported by a memorandum of legal argument and authority. Responding to the objection, the attorney for the trustee has filed a narrative memorandum alleging certain motives for the objection but failing to provide supportive authority for his position. Since the supplemental reply of the attorney for the trustee has criticized this Court for what he believes are unnecessary delays (letter from Glenn L. Schilling, dated March 16, 1982), the Court will only respond that a decision on the motion would have issued earlier had the attorney for trustee specifically addressed the issues raised by the objection, and thereby avoided the necessity of the Court's extensive research.

Contrary to the position of the attorney for the trustee that the Court should approve such application *pro forma,* the Court concludes that the adoption of such a policy would be a misfeasance of duty.

This view was so aptly expressed in the very recent decision of *In Re Red Cross Hospital Assoc., Inc.,* 18 B.R. 593 (1982) United States Bankruptcy Court for the Western District of Kentucky, wherein The Honorable Merritt S. Deitz, Jr., awarded fees in the amount of $1,500.00 to the attorney for trustee upon an application in the total amount of $6,273.00.

There, Judge Deitz, in circumstances similar to the case at bar, stated that "... an attorney-trustee petitioning for payment carries the responsibility of carefully discriminating between those services strictly legal in nature and those which inhere in the office of the trustee. The two offices, attorney and trustee, when mutually occupied, are symbiotic; each enhances the performance of the other. The beneficial end result is efficiency and enlargement of the estate." Opinion at 594.

Further, the Court reasoned that "[t]he very quality ... which makes the attorney particularly qualified to act as trustee, unfortunately beclouds the matter of compensation. It requires the trustee to delineate, to the extent that conscience and recollection permit, which services were performed in which capacity. That is no mean chore. A given act may be that of a trustee enlightened by legal understanding, or that of a lawyer made knowledgeable of bankruptcy by his trustee appointment, or both. But the duty of precise delineation must remain exclusively that of the attorney-trustee to perform. Without it the court will not substitute its judgment." Opinion at p. 594.

This Court supports and concurs in the reasoning of *In Re Red Cross Hospital Assoc., Inc., supra,* and therefore that case is herein attached and incorporated by reference as if set out in full.

It appears that factual issues are in dispute such that in fairness to all parties an evidentiary hearing is mandated. The hearing will enable the attorney for the trustee to have the opportunity of specifically addressing the objection as well as providing the opportunity for rebuttal on behalf of the movant here.

WHEREFORE, IT IS ORDERED AND ADJUDGED that the matter be and is set for an evidentiary hearing on *May 3, 1982, at 3:00 p. m., at 410 U. S. Courthouse, 601 West Broadway, Louisville, Kentucky.*